J. P. PRICE LUMBER CO. *v.*
Charles L. DANIELS, Director of Labor
and Ronnie GASTON

E 80-22                                      604 S.W. 2d 579
Court of Appeals of Arkansas
Opinion delivered September 17, 1980

*Ross & Ross*, by: *James A. Ross, Jr.*, Monticello, for appellant.

*Herrn Northcutt*, Little Rock, for appellees.

DAVID NEWBERN, Judge. The question on this employment security benefits appeal is whether the board of review's decision in favor of the employee may be sustained in view of the fact that the employee declined to appear or otherwise present evidence to the appeals tribunal or board of review, and the employer presented substantial evidence in support of its position. The holding in favor of the appellee-employee was based upon his statement which was made to a local employment security agency when he filled out a claims worksheet. We hold that statement may not be considered substantial evidence to support the ruling of the board of review.

Ark. Stat. Ann. § 81-1107(d)(2) (Repl. 1976) provides that "the appeal tribunal, after affording the parties a reasonable opportunity for a fair hearing, and on the basis of the record, shall affirm, modify, or reverse" the determination of an employment security division office. Where, as in this case, the employee has prevailed upon his claim at the agency level the burden is upon the employer to go forward with evidence before the appeals tribunal to overcome the prima facie case in favor of the employee created by the agen-

cy determination. *Little Rock Furniture Mfg. Co.* v. *Commission of Labor*, 227 Ark. 288, 298 S.W. 2d 56 (1957). In the case before us the employer has met the burden of going forward with the evidence before the appeals tribunal. Mr. Cotham, the supervisor of the employee, gave strong testimony with respect to the appellee's absences, tardiness, and sleeping on the job. The appeals tribunal and board of review apparently disregarded his testimony because he was unable to say that the employee did not telephone to advise the employer of automobile trouble on the date of his last absence which admittedly precipitated his discharge for misconduct.

In this court the standard for review of board of review decisions is well settled. We must affirm if there is substantial evidence to support the board's determination. *Terry Dairy Products Co.* v. *Cash*, 224 Ark. 576, 275 S.W. 2d 12 (1955). We have recently determined that hearsay testimony before the appeals tribunal does not qualify as substantial evidence. *Woods* v. *Employment Security Division, et al.*, 269 Ark. 613, 599 S.W. 2d 435 (Ark. App. 1980). We have also held that an employee need not appear at an appeals tribunal hearing in order to have his appeal considered if he has presented evidence to the appeals tribunal in writing. *Stewart* v. *Charles L. Daniels, et al.*, 269 Ark. 809, 601 S.W. 2d 245 (Ark. App. 1980). As noted above, the question here is whether we can go outside the record compiled by the appeals tribunal and the board of review. In other words, to affirm this case we would have to hold that the initial statement made by the employee when he filled out his claims worksheet is substantial evidence to support his claim.

Although we see no reason why the board of review and appeals tribunal may not consider a claimant's initial statement to the local employment security agency as some evidence either in support of the claim or in opposition to it, we cannot say such a statement alone serves as "substantial evidence" in support of the claim. That is especially true in this case where the statement made by the employee addressed only the matter of his excuse for one of many absences to which direct testimony was given before the appeals tribunal by his supervisor.

Reversed.

HOWARD, J., dissents.

GEORGE HOWARD, JR., Judge, dissenting. The necessary facts for an understanding of the issue presented are:

On Monday, September 10, 1979, claimant, while enroute to his place of employment for respondent, encountered automotive problems and, consequently, did not report to work but, according to a written statement submitted to the local office of the Employment Security Division, telephoned his employer advising him of his automotive difficulties.

In protesting claimant's application for benefits, the employer submitted the following written statement as the reason for the termination of claimant's services:

> " ' He did not show up for work regular, was supposed to have been here on Monday, 9/10, was not so we hired someone else. When he came to work Tuesday we told him that we would call him when we have work.' "

During the hearing before the Appeals Tribunal, a representative for the employer testified:

> "Well, he was late it might not have been 3/4 of the time, but he was late a lots and, like, if he ever called in I don't know it, I mean, I'm not saying that he didn't, but I didn't know . . . . Ah, the absenteeism just lead up to it ah, this last day was the straw that broke the camel's back with me. . . ."

The following exchange took place between the Referee and the representative for the employer:

REFEREE: Mr. Cotham was he actually discharged from his job because of sleeping on the job or for being late to work?

COTHAM: *That particular time, for late to work.* (Emphasis added)

REFEREE: Okay, now then I believe according to the information he furnished the Agency or in his statement, he stated that he started to work on September 10, his car broke down, he called and stated that he was unable to get to work because of transportation problems, that he would get in the next day and apparently somebody told him it was okay. When he came to work the next day he was discharged from his job. Do you know if he called in on that morning?

COTHAM: No sir, I don't.

REFEREE: Do you question as to whether he did or did not sir?

COTHAM: I would question that, because if he called in, he never did call in and if he called in that morning that was, that was the first morning. I'm not saying that he didn't call in that morning, but I didn't get the word for it, I didn't get the word to it.

REFEREE: Have you subsequently to the time he was discharged made any kind of an investigation to see if anybody received a telephone call in authority as far as the office or anything like that was concerned?

COTHAM: No sir.

REFEREE: You have not made the investigation?

COTHAM: No sir.

REFEREE: Then there is a possibility that he did call in that morning?

COTHAM: *Well, as far as I'm concerned there is.* (Emphasis added)

While the majority recognizes that the employer had the burden of going forward with the evidence, during the hearing before the Appeals Tribunal, to overcome the *prima facie*

case in favor of the claimant, the majority concludes, however:

> ". . . In the case before us the employer has met the burden of going forward with the evidence before the appeals tribunal. Mr. Cotham, the supervisor of the employee, gave strong testimony with respect to the appellee's absences, tardiness, and sleeping on the job. The appeals tribunal and board of review apparently disregarded his testimony because he was unable to say that the employee did not telephone to advise the employer of automobile trouble on the date of his last absence which admittedly precipitated his discharge for misconduct."

The troubling part of the majority's conclusion is the difficulty that I have in finding that the employer *"gave strong testimony"* in support of its justification for discharging claimant when it is readily apparent that not only is the evidence submitted by the employer conflicting as to the reason claimant was discharged on Monday, September 10, but has no persuasive or probative value at all regarding the question whether the claimant notified his employer of his automotive problem.

It is well recognized that it is the prerogative of the administrative agency to resolve conflicts and determine credibility of witnesses. This is so basic that it is not even necessary to cite any authorities in support of this proposition. It is plain that the Board of Review, here, resolved all conflicts and doubts in behalf of the claimant.

Finally, the majority appears to be somewhat disturbed by the fact that the claimant did not appear in person, during the hearing, before the Appeals Tribunal, but Ark. Stat. Ann. § 81-1107(d)(3) provides in relevant part:

> (3) . . . [T]he Board [of Review] may on the basis of the evidence previously submitted in such case, or upon the basis of such additional evidence as it may direct be taken, affirm, modify or reverse the findings and conclusions of the appeal tribunal.

(4) . . . The Board of Review, appeal tribunals and special examiners shall not be bound by common law or statutory rules of evidence or by technical rules of procedure, but any hearing or appeal before such tribunals shall be conducted in such manner as to ascertain the substantial rights of the parties. . . . (Emphasis added).

It is clear that claimant's presence was not absolutely required, under the law, in order for the Appeals Tribunal to review this proceeding. Moreover, the record does not reflect whether the respondent requested or demanded that the claimant be required to appear in person.

I would affirm the action of the Board of Review in allowing claimant benefits.