William FARMER *v.* William F. EVERETT, Director of Labor, and ALLRIGHT PARKING, INC.

E 82-201                                    648 S.W.2d 513

Court of Appeals of Arkansas
Opinion delivered March 23, 1983
[Rehearing denied April 20, 1983.*]

*COOPER, J., would grant rehearing.

24

*Marilyn Rauch,* Central Arkansas Legal Services, for appellant.

*Bruce H. Bokony,* for appellees.

DONALD L. CORBIN, Judge. In this unemployment compensation case the Board of Review reversed the Appeal Tribunal's decision and denied benefits on the ground that appellant was discharged for misconduct. It based its decision on a finding that claimant had exhibited a poor attitude in his dealings with the employer's customers to such a degree as to constitute misconduct.

Appellant worked as a parking attendant for Allright Parking at the Union National Bank Building for over nine and one-half years. He was dismissed on February 12 for misconduct after the building maintenance department received a written complaint from a customer accusing him of "giving her a nasty look and squealing her tires".

The agency denied benefits on the ground of misconduct and appellant appealed. A hearing was held at which only appellant appeared. He presented testimony to the effect that he had not been warned that his behavior was offensive or inappropriate and to the best of his knowledge he had received very few complaints. The Appeal Tribunal awarded benefits. The employer appealed by letter requesting that another hearing be held because they wished to offer additional evidence. Attached to the employer's letter were two letters and two affidavits.

The Board of Review remanded the case to the Appeal Tribunal level with directions to schedule another hearing for the purpose "of taking the testimony from either or all parties who appear to give testimony." Another hearing was

held at which appellant and the employer's attorney appeared. The employer himself did not appear. At the hearing the employer's attorney submitted affidavits from two customers accusing appellant of discourtesies. One of the affiants was the customer who had submitted the complaint which initiated appellant's dismissal on Feb. 12. The other affiant complained that on December 22, appellant had used obscenities and had threatened him. The attorney also submitted an affidavit signed by the employer. The Board of Review disqualified appellant from receiving benefits for a period of eight weeks of employment on the ground that claimant had been discharged from his last work for misconduct in connection with the work [Section 5 (b) (1)]. The Board of Review also reduced claimant's maximum benefit amount by eight times the weekly benefit amount but not to an amount which is less than the weekly benefit amount pursuant to Section 3 (d).

On appeal to this court the appellant is for the first time represented by counsel and he raises two issues: (1) the proceedings of the Employment Security Division were not conducted in such a way as to ascertain the substantial rights of the appellant and (2) there is no substantial evidence to support the Board's finding that claimant was discharged for misconduct in connection with the work.

First, we shall deal with the issue of the adequacy of the proceedings. The appellant contends that the Board's decision is based on evidence which should not have been allowed in that the employer's attorney allowed himself to be sworn as a witness and testified in violation of the American Bar Association's Code of Professional Responsibility. Appellant contends that the disparity between appellant's position as an unrepresented party and Allright's position with its attorney testifying as a witness created such a gross imbalance in power and effect that appellant's burden of persuasion was made unreasonably heavy and made it impossible to have correctly ascertained the substantial rights of the claimant.

It is difficult to say from the record whether appellee's attorney was actually sworn as a witness. When asked by the

referee if he would be testifying as a witness, the attorney responded that his testimony might not be admissible because of its hearsay nature and he indicated that his purpose at the hearing was to present affidavits. The referee later stated that there are no personal witnesses for the employer. We wish to reiterate strongly our disapproval of an attorney testifying in an action in which he is an advocate. An attorney who is to testify in an action should withdraw from the litigation. On the other hand, if an attorney is going to serve as an advocate for his client, he should refrain from testifying in the action. *Enzor* v. *State,* 262 Ark. 545, 559 S.W.2d 148 (1977). The fact that the employer's attorney may have allowed himself to be sworn, although improper, would not under the present fact situation be grounds for reversal.

Next, appellant complains that his right to due process was denied because he did not have the opportunity to confront and cross-examine adverse witnesses. As previously stated, the employer's attorney presented three affidavits at the hearing which the Board of Review relied upon in their findings of fact. Appellant contends that the Arkansas Supreme Court's decision in *Leardis Smith* v. *Everett,* 276 Ark. 430, 637 S.W.2d 537 (1982), requires that he be given an opportunity to cross-examine these affiants and the Board's failure to afford him that opportunity denied him his right to due process. In *Leardis Smith* v. *Everett, supra,* the Arkansas Supreme Court addressed two issues: first, the admissibility of hearsay evidence and the weight to be afforded it, and, second, the requirements of due process in administrative proceedings. In that case, the Supreme Court reversed the Court of Appeals in *Leardis Smith* v. *Everett,* 4 Ark. App. 197, 629 S.W.2d 309 (1982). The Supreme Court's decision held that *Woods* v. *Daniels,* 269 Ark. 613, 599 S.W.2d 435 (Ark. App. 1980), which stated that hearsay alone was not substantial evidence is contrary to the decision in *Bockman* v. *Ark. State Medical Board,* 229 Ark. 143, 313 S.W.2d 826 (1958), and firmly established the rule in unemployment compensation cases that hearsay alone can constitute substantial evidence.

In *Smith* v. *Everett, supra,* the Supreme Court also addressed the issue of claimant's right to cross-examine

adverse witnesses under due process of law. The Court relied on the United States Supreme Court case of *Goldberg* v. *Kelly*, 397 U.S. 254 (1980), wherein the following language is found:

> The fundamental requisite of due process of law is the opportunity to be heard. . . . In the present context these principles require that the recipient have timely and adequate notice detailing the reason for a purposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments in evidence orally.

In *Smith* v. *Everett, supra,* the Supreme Court reversed the Board of Review's decision because "the minimum requirements for due process of law" were not met as the petitioner did not have an opportunity to subpoena and cross-examine adverse witnesses at an evidentiary hearing.

The concept of hearsay evidence presupposes that the declarant is not present and available for cross-examination. However, the rule in Arkansas permitting the admission of hearsay evidence and the holding that hearsay evidence alone can constitute substantial evidence necessarily implies that the admission of hearsay evidence does not in and of itself violate one's right to due process. The question now before this court is how must hearsay evidence be presented and in what form of proceeding so as to protect the due process rights of parties as they relate to confrontation and cross-examination of adverse witnesses.

First, a party must know of or have an opportunity to know what evidence is being considered. In *Greene* v. *McElroy*, 360 U.S. 474 (1959), the United States Supreme Court made the following statement:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where government action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's

case must be disclosed to the individual so that he has an opportunity to show that it is untrue.

This court stated in *Brown Jordan* v. *Dukes,* 269 Ark. 581, 600 S.W.2d 21 (Ark. App. 1980):

It is clear to us that the statute [Ark. Stat. Ann. § 81-1107 (d) (3) (Repl. 1976)] does not permit the board to consider evidence of which a party has not been apprised.

Second, when hearsay evidence has been submitted to the fact-finding body, a party must have the right of a rehearing for the purpose of subpoenaing and cross-examining adverse witnesses. In *Davis* v. *Industrial Commission,* 103 Ariz. 114, 437 P.2d 647 (1968), the Arizona Supreme Court held: "The very existence of the right to apply for a rehearing vouchsafes his right to a fair hearing on the merits." In *Smith* v. *Everett, supra,* the Supreme Court pointed out that the petitioner had been informed that another hearing could not be held; thus, he was refused the opportunity to confront and cross-examine his adverse witnesses.

Having set forth some of the requirements of due process when hearsay evidence is received by the Employment Security Agency, we turn to the facts at bar. Here, the affidavits complained of were admitted and read into the record at the second hearing at which the appellant was present. Appellant replied to the charges contained in the affidavits but he did not request another hearing so that the affiants could be present and cross-examined.

In *Richardson* v. *Perales,* 402 U.S. 389 (1971), the Supreme Court addressed the petitioner's need to request an opportunity to cross-examine adverse witnesses. In that case the claimant complained that he did not have an opportunity to cross-examine a physician who had prepared a medical report adverse to his claim for disability benefits. The medical report had been admitted and was in claimant's file. The Supreme Court stated:

Although the claimant complains of the lack of opportunity to cross-examine the reporting physicians, he did not take advantage of the opportunity afforded him under 20 CFR § 404.926 to request subpoenas for the physicians. . . . This inaction on the claimant's part supports the Court of Appeals' view that the claimant as a consequence is to be precluded from now complaining that he was denied the rights of confrontation and cross-examination.

In *Davis* v. *Industrial Commission, supra,* the Arizona Court distinguished the right to cross-examine from the opportunity to cross-examine.

We emphasize here that the right to cross-examine witnesses in a proceeding before the Industrial Commission must be distinguished from the opportunity to cross-examine to the extent that though the right can be waived by the claimant, the opportunity cannot be restricted or denied claimant by the Commission. With that being the framework of inquiry, the question is whether an opportunity to cross-examine has been denied the claimant in this case.

. . .

We affirm petitioner's right of cross-examination but note that petitioner had notice of the doctor's statement and made no request for further hearing to cross-examine.

. . .

We hold that claimant must designate the witnesses upon which he wishes to exercise the right of cross-examination.

Although this question has not been addressed within the confines of unemployment compensation benefits, the Arkansas Supreme Court has held that in workers' compensation cases, it was not error on the part of the Commission for failing to allow cross-examination when it was not asked to do so. *Plants* v. *Townsend Curtner Lumber Co.,* 247 Ark. 824, 448 S.W.2d 349 (1969).

We hold that procedural due process requirements were met in the case at bar and the proceedings were conducted in such a manner as to ascertain the substantial rights of the parties as required by Ark. Stat. Ann. § 81-1107 (d) (4).

We now turn to appellant's second issue of whether there is substantial evidence to support the Board's finding that claimant was discharged for misconduct in connection with the work. In this case the Board specifically determined:

> As the employer's business to a large extent depends on the customer's trust of the employer's agent and employee, any belligerent expression or statement would of necessity diminish that trust and confidence that the employer had a right to expect their employee to promote among the customers.

Appellant admitted to having received customer complaints although he contends that he had been exonerated by his employer for his actions. In its decision, the Board relied on appellant's testimony as well as the affidavits of the two customers who had complained concerning appellant's behavior.

"Misconduct which precludes benefits under the Employment Security Law contemplates willful or wanton disregard of an employer's interest or is manifested in the deliberate violation or disregard of those standards of behavior which the employer has a right to expect from his employee." *Hodges* v. *Producers Rice Mill,* 270 Ark. 188, 603 S.W.2d 479 (Ark. App. 1980).

In appellate review under Ark. Stat. Ann. § 81-1107 (d) (7), which makes findings of the Board of Review, as to the facts, conclusive, if supported by evidence and in the absence of fraud, and confining judicial review to questions of law, we must give the successful party the benefit of every inference that can be drawn from the testimony, viewing it in the light most favorable to the successful party, if there is any rational basis for the board's findings based on substan-

tial evidence. *Harris v. Daniels,* 263 Ark. 897, 567 S.W.2d 954 (1978).

We affirm the Board's finding that claimant was discharged from his last work for misconduct in connection with the work.

The Board, however, made another finding which we do not affirm. The last sentence in the Board's decision says, "If an overpayment has occurred, the claimant shall be liable to repay the Fund under the provision of Section 6 (f) (2) of the Arkansas Employment Security Law." If appellant has been paid benefits to which he was not entitled, due process requires that his liability to repay the amount so received must be determined after he has been afforded the opportunity of a hearing, after proper notice, upon all the issues set out in Ark. Stat. Ann. § 81-1107 (f) (2) (Supp. 1981). Since all those issues were not involved in this proceeding, the Board's finding of liability to repay is reversed and remanded. *Pritchett v. Director of Labor,* 5 Ark. App. 194, 634 S.W.2d 397 (1982).

Affirmed in part and reversed and remanded in part.

COOPER, CLONINGER and GLAZE, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent. In *Leardis Smith v. Everett,* 276 Ark. 430, 637 S.W.2d 537 (1982), the Employment Security Division denied unemployment benefits to Smith, holding that he was discharged for dishonesty. The Appeals Tribunal reversed, basing its decision on an affidavit of a customer which was submitted by the employer and the testimony of three witnesses. The Board of Review reversed based on the record and an additional affidavit. In that case, the Arkansas Supreme Court reversed this Court's affirmance of the Board of Review decision. The Supreme Court stated:

> Here, petitioner had no opportunity to subpoena and cross-examine adverse witnesses either at the hearing before the Appeals Tribunal or at the proceeding before the Board of Review. Although the notice

informing him of the hearing date before the Appeals Tribunal stated that upon his request witnesses could be subpoenaed, at that time he did not know who the adverse witnesses would be. Petitioner did know who the adverse witnesses were by the time his case was reviewed by the Board of Review; however, he was informed by the Board that a second hearing would not be held and that only affidavits could be submitted.

It is clear that petitioner has not had an opportunity to subpoena and cross-examine witnesses as required by the above cited cases setting forth the minimum requirements for due process of law. Therefore, we reverse the Court of Appeals and remand to the Board of Review for a hearing consistent with this opinion pursuant to Ark. Stat. Ann. § 81-1107 (d) (7) (Repl. 1976).

The only factual distinction I can find between the case at bar and *Leardis Smith* v. *Everett* is that Mr. Farmer did not ask the Board of Review to remand the case for an additional hearing. Further, it is worth noting that Farmer apparently had no notice that affidavits would be submitted until he arrived at the hearing. He did not request a continuance so that he could obtain the presence of the witnesses, although the attorney for Allright did ask for a continuance so that Mr. Baldwin, the manager of Allright, could personally appear and testify. Although it is clear that the technical rules of evidence do not apply in administrative hearings, the majority, in effect, has held that because the appellant did not object to the hearsay testimony being admitted, nor did he request another hearing, he has waived any right to object to the affidavits being admitted into evidence. I think such a holding contrary to the holding of the Arkansas Supreme Court in *Leardis Smith* v. *Everett, supra,* and to the holdings of the United States Supreme Court in *Richardson* v. *Perales,* 402 U.S. 389 (1981), and *Goldberg* v. *Kelly,* 397 U.S. 254 (1970). In *Perales,* and the cases following it, the Court held that hearsay, in the form of doctor's reports, could constitute substantial evidence. The Court held that Perales had waived his right to object by failing to exercise his right under Social Security regulations to request subpoenaes for the physicians. More importantly, the Court,

in reviewing the evidence, mentioned several factors which it felt assured the reliability of the hearsay. Without detailing the factors which the United States Supreme Court considered, I believe it is important to note that *Perales*, in my opinion, stands for the proposition that the hearsay, if it is to constitute substantial evidence, must have some indicia of reliability.

In *Goldberg*, the United States Supreme Court held that a claimant must be given an opportunity to confront and cross-examine adverse witnesses prior to his welfare benefits being terminated.

In the case at bar, I find nothing to indicate the reliability of the affiants. Exhibit A is a letter, which is not notarized, from Daniel Baldwin, an employee of Allright, to the building engineer at Union National Bank, which informed the building engineer that Mr. Farmer had been terminated. Another exhibit is a letter from a Ms. O'Shields which indicates that an attendant named William was rude to her. There is nothing in this exhibit which identifies the appellant as the individual responsible. Exhibit B is an affidavit from a Mr. Eason, who identifies William Farmer as an individual who was rude to him in the parking deck. Exhibit C is an affidavit from Ms. O'Shields, which identifies William Farmer as an individual who was rude to her on a particular date. Exhibit 1 is an affidavit from Mr. Baldwin which indicates that he had received numerous complaints regarding Mr. Farmer. Ms. O'Shields's affidavit is dated April 23, 1982, while her letter is dated February 11, 1982. I find no explanation in the record as to the manner in which Ms. O'Shields found out the appellant's identity between February 11, 1982 and the date she executed the affidavit. I am unable to find any evidence in the record to indicate how Mr. Eason obtained Mr. Farmer's name during the interim between the date of the alleged misconduct, December, 1981, and the time he executed the affidavit on April 23, 1982.

I agree with the idea that hearsay may constitute substantial evidence, but I do not subscribe to the idea that we should presume the reliability of the hearsay.

The majority attempts to point out how hearsay evidence must be presented so as to protect the due process rights of the parties. First, says the majority, a party must know or have an opportunity to know what evidence is being considered. The appellant in the case at bar found out what evidence was going to be considered when he arrived at the hearing. The referee, and Allright's attorney, recognized the hearsay character of the evidence and, because of the recognition of possible problems, Allright's attorney requested a continuance, which was denied. I think the majority is on thin ice when it holds that the appellant was adequately informed of the evidence which was going to be considered by the Appeal Tribunal and the Board.

Secondly, the majority holds, in effect, that the appellant waived his right to object to the hearsay because he did not request another hearing. It should be noted that the appellant, as best he could, attempted to question Allright's attorney regarding the specifics of the allegations contained in the affidavits. The attorney candidly stated that he had no knowledge whatsoever of the events referred to in the affidavits. The appellant did not say the magic words: "I object to the hearsay testimony because I cannot cross-examine the affiants, and therefore I request a continuance", but it seems ludicrous to me to require that sort of formality on the part of the appellant, particularly in view of the relaxed application of the rules of evidence to administrative hearings.

In short, I think the majority opinion is totally contrary to *Leardis Smith* v. *Everett, supra,* and to the decision of the United States Supreme Court in *Richardson* v. *Perales, supra.* I believe the appellant was denied due process and I would reverse and remand the case for further proceedings which would afford the appellant a realistic, rather than an imagined, opportunity to cross-examine the persons whose complaints resulted in his dismissal and his denial of unemployment compensation benefits.

Further, I should note that I disagree with the majority's implied criticism of the attorney for Allright. I am unable to find any basis whatsoever for the contention that

the attorney testified. The colloquy between the referee and Mr. Davis is as follows:

> REFEREE: Alright. Now Mr. Davis would you actually be testifying yourself?

> DAVIS: Well, I understand this might be a problem. No sir, I do not. I don't have personal knowledge of the incident itself. I have talked to Mr. Baldwin, of course, I realize that is hearsay and that might cause a problem, but as I say, he was called away this morning. If it would be more appropriate to ask for a continuance I am prepared to do that but I think that I have enough evidence with the affidavits of the employees and Mr. Baldwin himself. T.22

Later, prior to the administration of the oath to the claimant, the referee stated:

> [REFEREE]: . . . Now, Mr. Davis, you say you will not be testifying?

> DAVIS: Well, I would like to have the opportunity to.

> REFEREE: Well, let's go ahead and let you.

> DAVIS: We'll see if they will accept that as evidence. T.24

It appears clear to me that what happened was the attorney indicated that he would not be testifying, and that he wanted to go ahead and submit the affidavits and see if the Board would accept them as evidence. I simply find no basis to conclude that the attorney ever testified in the case. He did make statements to the referee regarding the affidavits in the form of argument, and he did attempt to respond to questions by the appellant, but I find no evidence that the oath was ever administered to him, or that he actually testified.

I respectfully dissent.

CLONINGER and GLAZE, JJ., join in this dissent.